Anne L. Weismann
D.C. Bar No. 298190
Melanie Sloan
D.C. Bar No. 454584
Citizens for Responsibility
 and Ethics in Washington
11 Dupont Cir., N.W.
2nd Floor
Washington, D.C. 20036
202-588-5565

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
CITIZENS FOR RESPONSIBILITY AND         :
ETHICS IN WASHINGTON                    :
11 Dupont Cir., N.W.                    :
Washington, D.C. 20036                  :
                                        :
      Plaintiff                 :
                                        :  Case No.: _____
  v.                                    :
                                        :
UNITED STATES DEPARTMENT OF             :
HOMELAND SECURITY                       :
Washington, D.C. 20528                  :
                                        :
      Defendant                 :
_____ :

**COMPLAINT FOR DECLARATORY**
**JUDGMENT AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended, as well as agency FOIA regulations, challenging the failure of the United States Department of Homeland Security ("DHS") to fulfill the request of Plaintiff for

documents relating to DHS's contracts and contacts with public affairs firms.

2. This case seeks declaratory relief that Defendant is in violation of the FOIA for failing to fulfill Plaintiff's request for records, and injunctive relief that Defendant immediately and fully comply with Plaintiff's request under the FOIA.

## JURISDICTION AND VENUE

3. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B). This court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

## PARTIES

4. Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") is a non-profit corporation, organized under section 501(c)(3) of the Internal Revenue code. CREW is committed to the protection of the right of citizens to be informed about the activities of government officials and to ensuring the integrity of government officials. CREW is dedicated to empowering citizens to have an influential voice in government decisions and in the governmental decision-making process. CREW uses a combination of research, litigation, and advocacy to advance its mission.

5. CREW has invested considerable organizational resources in pushing the U.S. government to take ethical issues seriously. CREW closely monitors the laws and rules applicable to government agencies.

6. CREW is harmed by DHS's failure to comply with the FOIA, because that failure harms CREW's ability to provide full, accurate, and current information to the public. CREW has exhausted the applicable administrative remedies with regard to DHS. 5 U.S.C. §

552(a)(6)(C).

7.  Defendant U.S. Department of Homeland Security is an agency within the meaning of 5 U.S.C. § 552(f). DHS is the federal agency with possession and control of the requested records, and is responsible for fulfilling Plaintiff's FOIA request.

## STATUTORY FRAMEWORK

### The Freedom of Information Act

8.  The FOIA, 5 U.S.C. § 552, requires agencies of the federal government to release requested records to the public unless one or more specific statutory exemptions apply.

9.  An agency must respond to a party making a FOIA request within twenty working days, notifying that party of at least its determination whether or not to fulfill the request, and of the requester's right to appeal its determination to the agency head. 5 U.S.C. § 552(a)(6)(A)(i).

10.  An agency must respond to a FOIA appeal within twenty working days, notifying that party of its determination to either release the withheld records or uphold the denial. 5 U.S.C. § 552(a)(6)(A)(ii).

11.  In "unusual circumstances," an agency may delay its response to a FOIA request or appeal, but must provide notice and provide "the date on which a determination is expected to be dispatched." 5 U.S.C. § 552(a)(6)(B).

12.  This Court has jurisdiction, upon receipt of a complaint, "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).

13.  The FOIA provides a mechanism for disciplinary action against agency officials who have acted inappropriately in withholding records. Specifically, when requiring the release

of improperly withheld records, if the Court makes a written finding that "the circumstances surrounding the withholding raise questions whether agency personnel acted arbitrarily or capriciously," a disciplinary investigation is triggered. 5 U.S.C. § 552(a)(4)(F).

## FACTS GIVING RISE TO PLAINTIFF'S CLAIMS FOR RELIEF

14. On January 7, 2005, *USA Today* reported that conservative commentator Armstrong Williams had been paid $240,000 by the Department of Education to promote the Bush administration's No Child Left Behind law. Greg Toppo, <u>White House paid journalist to promote law; Ethics of No Child Left Behind deal questioned</u>, *USA Today*, January 7, 2005 (attached as Exhibit A). The contract with Williams was filtered through the Ketchum public affairs firm. <u>Id.</u>

15. The contract with Williams was only one of several attempts by the Bush administration to hide the source of government propaganda. Prior to the revelations concerning Armstrong Williams, the Government Accountability Office ("GAO") found that in two other recent incidents, federal agencies violated the prohibition on publicity and propaganda by hiring public relations firms to produce covert propaganda.

16. In May 2004, GAO found that video news releases created by Ketchum in support of the newly enacted Medicare law and distributed by the Department of Health and Human Services constituted illegal covert propaganda because the releases failed to reveal the source of the information. U.S. Government Accountability Office, <u>Department of Health and Human Services, Centers for Medicare and Medicaid Services – Video News Releases</u>, GAO/B-302710 (May 19, 2004).

17. More recently, GAO found that public relations firm Fleishman Hillard had created video news releases which were distributed by the Office of National Drug Control

Policy.  U.S. Government Accountability Office, Office of National Drug Control Policy – Video News Release, GAO/B-303495 (Jan. 4, 2005).

18. On February 17, 2005, GAO issued an opinion reminding all heads of department, agencies and others concerned, of the constraints imposed by the publicity or propaganda prohibition on the use of prepackaged news stories and advising vigilance "to assure that agencies' activities comply with the prohibition."  U.S. Government Accountability Office, Prepackaged News Stories, GAO/B-304272 (Feb. 17, 2005).

19. The Bush administration has rejected the conclusions of these GAO opinions, taking the position that this kind of covert propaganda is legal.  Christopher Lee, Administration Rejects Ruling On PR Videos, *The Washington Post*, March 15, 2005 (attached as Exhibit B). Comptroller David M. Walker continues to believe that the Bush administration's position is contrary to appropriations law and is unethical.  As he explained in an interview, "This is more than a legal issue.  It's also an ethical issue that involves important good government principles, namely the need for openness in connection with government activities, and expenditures . . . We should not just be seeking to do what's arguably right.  We should be doing what's right."  Id.

20. After the Armstrong Williams contract became public, it was discovered that syndicated columnist Maggie Gallagher, who frequently wrote pieces supporting the Bush administration's $300 million initiative encouraging marriage, had received a $21,500 contract with the Department of Health and Human Services.  Howard Kurtz, Writer Backing Bush Plan Had Gotten Federal Contract, *The Washington Post*, January 26, 2005 (attached as Exhibit C).

21. Only three days after that revelation, the Department of Health and Human Services disclosed that a third columnist had been paid to assist in promoting Bush administration policy.  Conservative columnist Mike McManus received $10,000 to support the

President's marriage initiatives.  Sibhan McDonough, <u>Another Columnist Was Hired to Promote White House Policy</u>, *Chicago Tribune*, January 29, 2005 (attached as Exhibit D).

22.     Because of the questions raised about the use of taxpayer dollars to fund public relations campaigns, the minority staff of the House Committee on Government Reform prepared a report on the Bush administration's public relations spending.  According to the report, in the four-year period from 2001 through 2004, the federal government spent over $250 million on 286 contracts with major public relations agencies.  U.S. House of Representatives Committee on Government Reform – Minority Staff, Special Investigations Division, <u>Federal Public Relations Spending</u>, p. 4 (Jan. 2005) (attached as Exhibit E).  The majority of this spending went to four large firms: Ketchum Communications received $97 million in contracts, The Matthews Media Group received $51.6 million in contracts, Fleishman Hillard received $41.1 million, and Porter Novelli received $33 million in contracts.  <u>Id.</u> at 6.

23.     Senators Frank Lautenberg (D-N.J.) and Edward M. Kennedy (D.-Mass.) wrote to President Bush asking him to make good on his directive that agencies abandon these "clandestine public relations practices" – practices that the GAO has found to be illegal. Christopher Lee, <u>Administration Rejects Ruling On PR Videos</u>, *The Washington Post*, March 15, 2005.  As those Senators explained, "[w]hether in the form of a payment to an actual journalist, or through the creation of a fake one, it is wrong to deceive the public with the creation of phony news stories."  <u>Id</u>.

**Plaintiff's FOIA Request and Follow-Up**

24.     By letter dated January 11, 2005, pursuant to the Freedom of Information Act (FOIA), Plaintiff requested that the DHS produce records of any contacts between the agency and any external public affairs firms, including, but not limited to Ketchum and Fleishman

Hillard (attached as Exhibit F).  Plaintiff requested any contracts that DHS may have entered into with any public affairs firms as well as records of contacts between any DHS employee and the employee of any public affairs firm with which DHS had a contractual relationship.  Id.

25. To date, Plaintiff has received no response to its request.  Instead, all that DHS has done is acknowledge receipt of Plaintiff's FOIA request, by letter dated January 24, 2005, and grant Plaintiff's request for a fee waiver.

26. Under the FOIA, DHS was required to make a determination with respect to Plaintiff's FOIA request within twenty days (excluding Saturdays, Sundays and legal holidays) after receipt of the request.  According to Plaintiff's calculations, the twentieth day fell on February 8, 2005.

27. The statutory time limit for DHS to respond to Plaintiff's request has run out and Plaintiff has constructively exhausted the applicable administrative remedies.  5 U.S.C. § 552(a)(6)(C); *see also* Judicial Watch v. Rossotti, 326 F.3d 1309, 1310, 356 U.S.App.D.C. 54, 55  (D.C. Cir. 2003); Oglesby v. U.S. Department of the Army, 920 F.2d 57, 62, 287 U.S.App.D.C. 126, 131 (D.C. Cir. 1990).

### PLAINTIFF'S CLAIMS FOR RELIEF

### CLAIM ONE
(Failure to Produce Records)

28. Plaintiff realleges and incorporates by reference all preceding paragraphs.

29. Plaintiff properly asked for records within DHS's control.

30. Plaintiff is entitled by law to access to the records requested under the FOIA, unless Defendant makes an explicit and justified statutory exemption claim.

31. Therefore, Defendant violated FOIA's mandate to release agency records to the

public by failing to release the records as Plaintiff specifically requested. 5 U.S.C. §§ 552(a)(3)(A), 552(a)(4)(B).

## CLAIM TWO
**(Failure to Respond)**

32. Plaintiff realleges and incorporates by reference all preceding paragraphs.

33. On January 11, 2005, Plaintiff filed a FOIA request with DHS.

34. To date, Plaintiff has not received a response from DHS and DHS has exceeded the 20-working-day statutory time limit for such a response. 5 U.S.C. § 552(a)(6)(A)(i).

35. Therefore, DHS has violated the FOIA's mandate to respond to Plaintiff's FOIA request within the statutory time period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request that this Court:

(1) Declare that the DHS has violated the Freedom of Information Act (FOIA) by failing to lawfully satisfy Plaintiff's FOIA request of January 11, 2005;

(2) Order DHS to respond to Plaintiff's FOIA request;

(3) Order DHS to immediately release all records responsive to Plaintiff's FOIA request;

(4) Declare that DHS has violated the Freedom of Information Act (FOIA) by failing to lawfully satisfy Plaintiffs' FOIA request of January 11, 2005;

(5) Award Plaintiff its reasonable attorney fees and litigation costs in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

(6) Grant such other and further relief as the Court may deem just and proper.

        Respectfully submitted,

        _____
        Anne L. Weismann
        (D.C. Bar No. 298190)
        Melanie Sloan
        (D.C. Bar No. 434584)
        Citizens for Responsibility and
         Ethics in Washington
        11 Dupont Cir., N.W.
        Washington, DC  20036
        Phone: (202) 588-5565
        Fax: (202) 588-5020

        Attorney for Plaintiff

Dated: September 12, 2005