**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS ) <br> IN WASHINGTON, ) <br> 11 Dupont Cir., N.W. ) <br> Washington, D.C. 20036 ) <br>  ) <br> Plaintiff, ) <br>  ) <br> vs. ) <br>  ) <br> UNITED STATES DEPARTMENT OF ) <br> HOMELAND SECURITY ) <br> Washington, DC 20528 ) <br>  ) <br> Defendant. ) <br> _____) | CV-05-01801 (ESH) |

**DEFENDANT'S MOTION FOR A STAY OF THE PROCEEDINGS**
**OR, IN THE ALTERNATIVE, AN EXTENSION OF TIME**

In this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, Defendant Department of Homeland Security respectfully moves this Court for a stay of the proceedings pursuant to 5 U.S.C. § 552(a)(6)(C) pending the processing of Plaintiff's FOIA requests. Defendant is exercising due diligence in processing Plaintiff's requests while facing exceptional circumstances. Therefore, a stay of the proceedings is appropriate. In the alternative, Defendant seeks an extension of time to process Plaintiff's request and be able to make a dispositive motion. The argument and authority supporting Defendant's Motion are presented in a Memorandum in Support of Defendant's Motion for a Stay of the Proceedings or, in the alternative, an Extension of Time, filed contemporaneously herewith. The proposed orders are attached.

Dated: November 8, 2005

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

_/s/_____
ELIZABETH J. SHAPIRO (D.C. Bar 418925)
Assistant Branch Director
U.S. Department of Justice
Civil Division, Federal Programs Branch
<u>Mailing Address</u>
P.O. Box 883
Washington, D.C., 20044
<u>Delivery Address</u>
20 Massachusetts Ave., NW., Room 7152
Washington, DC 20001
Telephone: (202) 514-5302
Fax: (202) 616-8470
Elizabeth.Shapiro@usdoj.gov

COUNSEL FOR DEFENDANT

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, 11 Dupont Cir., N.W. Washington, D.C. 20036 | ) ) ) ) ) | |
| Plaintiff, | ) ) | CV-05-01801 (ESH) |
| vs. | ) ) | |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY Washington, DC 20528 | ) ) ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF A
MOTION FOR A STAY OF THE PROCEEDINGS
OR, IN THE ALTERNATIVE, AN EXTENSION OF TIME**

**INTRODUCTION**

On January 11, 2005, Plaintiff submitted a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for documents pertaining to contracts and communications between the Department of Homeland Security and public affairs firms. Plaintiff filed a complaint in September seeking production of those documents. After filing an answer, the Court issued an order setting a schedule for the filing of dispositive motions. Because Defendant U.S. Department of Homeland Security ("DHS") pursuant to 5 U.S.C. § 552(a)(6)(C)(i) and <u>Open Am. v. Watergate Special Prosecution Force</u>, 547 F.2d 605 (D.C. Cir. 1976) has not yet completed processing of Plaintiff's request, Defendant now seeks a stay of the proceedings until February 14, 2006 in order to allow the orderly processing of Plaintiff's request in the order it was received by DHS Headquarters. Plaintiff did not seek expedition of its request. For DHS

Headquarters to process the Plaintiff's request out of order would be unfair to other requesters waiting in line ahead of Plaintiff. Accordingly, DHS's request of a modest stay of ninety days should be granted.[1]

### FACTUAL AND PROCEDURAL BACKGROUND

By letter dated January 11, 2005, Plaintiff submitted a FOIA request to Defendant for records regarding:

> [A]ny contact, dating from January 1, 2001, that any office of the Department of Homeland Security may have had with any external public affairs firms including, but not limited to Ketchum Public Affairs and Fleischman-Hilliard *(sic)* Public Affairs. Specifically, [CREW requested] the release of any contracts the Department of Homeland Security may have entered into with any public affairs firm. [CREW] further request[ed] records of contacts any Department of Homeland Security employee may have had with any employee of any public affairs firm with which the Department of Homeland Security had a contractual relationship.

(Kendrick Decl., Attachment 1). Defendant responded to this request by letter on January 24, 2005. In the letter, Defendant acknowledged receipt of the request and granted a fee waiver. (Kendrick Decl., Attachment 2). However, Defendant also informed Plaintiff, "[a]s stated in the DHS Freedom of Information Act and Privacy Act regulations (Title 6, Chapter I, Part 5A, Section 5.5), the Department processes FOIA requests according to their order of receipt." (Kendrick Decl., Attachment 2). Plaintiff filed its Complaint on September 12, 2005, and Defendant filed its Answer on October 12, 2005. On October 13, 2005, this Court issued an order for Defendant to file a dispositive motion on or before November 14, 2005.

In a letter dated October 5, 2005, DHS further responded to Plaintiff's January 11, 2005

---

[1]Pursuant to Local Rule 7(m), Defendant's counsel Elizabeth Shapiro consulted with Plaintiff's counsel, Anne Weisman. Ms. Weisman indicated that she opposes DHS's motion for a stay or, alternatively, extension of time.

FOIA request. (Kendrick Decl., Attachment 3). Defendant stated that it understood the request to encompass:

> 1. [D]ocumentation of any communications from January 1, 2001 to present, that DHS had with any public affairs firms with which DHS has a contract, including Ketchum Public Affairs and Fleishman-Hillard Public Affairs; and
> 2. [C]opies of all DHS public affairs contracts from January 1, 2001, to present.

(Kendrick Decl., Attachment 3 at 1). In addition, Defendant indicated that since Item 1 "lacked specificity and was too broad for an effective search to be undertaken[,]" it interpreted Plaintiff's "request to be for documentation of any communications between DHS Contract Project Officers with members of public affairs firms." Id. The letter further instructed Plaintiff to "contact us to further refine the scope of our search" if "this interpretation [does] not capture the records you are seeking." Id. The remainder of the letter described the nature of the search and locations within DHS of possible responsive documents. Plaintiff responded with a letter dated October 18, 2005 that stated, "[g]iven that we are now in litigation with DHS, we will not be responding administratively to your October 5, 2005 letter." (Pl.'s Letter to Def., dated October 18, 2005, attached hereto as Exhibit 1).

## ARGUMENT

### The Department of Homeland Security is Entitled to a Stay Under FOIA

#### A. Legal Standard for a Stay of Proceedings

Understanding the difficulty in meeting the general requirement that an agency is to respond to a FOIA request within twenty working days of the date of receipt of the request, 5 U.S.C. § 552(a)(6)A)(i), "Congress inserted a special 'safety valve.'" Appleton v. FDA, 254 F. Supp. 2d 6, 8 (D.D.C. 20003) (quoting Open Am. v. Watergate Special Prosecution Force, 547

F.2d 605, 610 (D.C. Cir. 1976)).  Specifically, Congress provided that "[i]f the Government can show that exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records."  5 U.S.C. § 552(a)(6)(C)(I).  The safety valve ensures that the twenty working day deadline is not too rigid and unworkable.  See Appleton, 254 F. Supp. 2d at 8 citing Open Am., 547 F.2d at 610; see also Aguielera v. FBI, 941 F. Supp. 144, 148 (D.D.C. 1996).

>The D.C. Circuit defined "exceptional circumstances" as:
>
>> [W]hen an agency . . . is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of subsection (6)(A), and when the agency can show that it 'is exercising due diligence' in processing the requests.

Open Am., 547 F.2d at 616.  "Courts in this circuit have interpreted this 'exceptional circumstances' provision as excusing any delays encountered in responding to a request as long as the agencies are making good-faith efforts and exercising due diligence in processing requests on a first-in, first-out basis."  Appleton, 254 F. Supp. 2d at 8 citing Open Am., 547 F.2d at 616; Ohaegbu v. FBI, 936 F. Supp. 7, 8 (D.D.C. 1996).  The Electronic Freedom of Information Act Amendments of 1996 further defined "the term 'exceptional circumstances'" as not including "a delay that results from a predictable agency workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests."  5 U.S.C. § 552(a)(6)(C)(ii).  The 1996 Amendments were not meant to overturn Open America but rather "merely explain that predictable agency workload and a backlog alone, will not justify a stay."  Al-Fayed v. CIA, No. 00-2092, slip op. at 5 (D.D.C. Jan. 16, 2001, attached hereto as Exhibit 2).

-4-

Therefore, "a court shall consider an agency's efforts to reduce the number of pending requests in determining whether exceptional circumstances exist." 1996 U.S.C.C.A.N. 3448, 3467.[2]

Open America recognized that the "real parties at interest" were not the ones before the Court but the "other persons or organizations who made requests prior" to the plaintiff's request. Open Am., 547 F.2d at 614. "If everyone could go to court when his request had not been processed within thirty days, and by filing a court action automatically go to the head of the line at the agency, we would soon have a listing based on priority in filing lawsuits, i. e., first in court, first out of the agency." Id. at 615. Plaintiff is not entitled to cut in line solely because it filed a lawsuit. Rather, the "plaintiff bears the burden of showing a genuine need and reason for urgency in gaining access to Government records ahead of prior applicants for information." Edmond v. United States Attorney, 959 F. Supp. 1, 3 (D.D.C. 1997) (internal quotations omitted).

### B. The Department of Homeland Security More Than Satisfies the Legal Standard for a Stay

The analysis for an Open America stay comes down to whether an agency has shown exceptional circumstances and whether the agency is working in good faith and due diligence. See Appleton, 254 F. Supp. 2d at 10 (defendants met criteria for a stay by demonstrating "good faith efforts and due diligence in processing the plaintiff's request on a first-in, first-out

---

[2] Agencies can, in addition, also show exceptional circumstances based on the amount of material classified, based on the size and complexity of other requests processed by the agency, based on the resources being devoted to the declassification of classified material of public interest, or based on the number of requests for records by courts or administrative tribunals. 1996 U.S.C.C.A.N. 3448, 3467; see also Al-Fayed v. CIA, No. 00-2092, slip op. at 5 (D.D,C. Jan. 16, 2001) (Exhibit 2).

basis"and by showing a "reasonable progress in reducing its backlog."). As explained below, the Department of Homeland Security qualifies for a stay of proceedings under each of the factors relevant to this determination.

### 1. Due Diligence in Processing the FOIA Request

The Department of Homeland Security "is exercising due diligence in responding to the request," as required by 5 U.S.C. § 552(a)(6)C)(I). The requests are "generally processe[d] according to their order of receipt." (Kendrick Decl. ¶ 5.). To streamline the process, DHS uses a multitrack system so as to help distinguish between simple and complex requests. (Kendrick Decl. ¶ 5.). This system ensures that requests that do not require much time do not have to sit in line behind those requests that involve many pages or involve other time-consuming matters. Plaintiff's request was complex in nature. It involved "contracts, which, pursuant to Executive Order 12,6000 require submitter notice," and it involved "documents authored by DHS personnel in multiple components." (Kendrick Decl. ¶ 5.). The latter "could necessitate significant search time as well as adequate time for intra-agency consultations." (Kendrick Decl. ¶ 5.).

Even given this complex search, Defendant acted with due diligence. By January 24, 2005, Defendant acknowledged receipt of Plaintiff's FOIA request dated January 11, 2005. On that date, the staff at DHS's Disclosure Office "determined that contracts with public affairs firms would likely have the DHS Public Affairs Office as the project officer." (Kendrick Decl. ¶ 12). The Disclosure Office then requested a search for responsive documents from that office. (Kendrick Decl. ¶ 12). Understanding that obtaining records from other offices within DHS "can be a protracted process because of the press of other agency business," the Disclosure Office

followed up on its request for a search of documents. (Kendrick Decl. ¶ 11.). The Disclosure Office inquired about the request on March 29, 2005, on July 14, 2005, and again on September 15, 2005. (Kendrick Decl. ¶ 12). The Public Affairs Office returned a list of possible documents on September 29, 2005. (Kendrick Decl. ¶ 12). This list suggested that several components within DHS may have responsive documents.

Within a week of receiving the list of locations of possible responsive documents, the Disclosure Office sent a memorandum to these components concerning the relevant contract information. (Kendrick Decl. ¶ 13). Each component ordinarily processes its FOIA request as defined by DHS Freedom of Information Act and Privacy Act regulations (Title 6, Chapter I, Part 5A, Section 5.5). Since the documents are coming from several components and involve proprietary information, DHS Headquarters will, instead, coordinate the release of the documents to ensure consistency. (Kendrick Decl. ¶ 13). Some of these components are already near completion with processing while others need more time. (Kendrick Decl. ¶ 13).

### 2. Successful Backlog Reduction and Agency Reorganization Initiatives

To obtain a stay, an agency only needs to show "reasonable progress in reducing its backlog." 5 U.S.C. § 552(a)(6)(C)(ii). However, reasonable progress "does not require that annual backlog reductions be uniform." Appleton, 254 F. Supp. 2d at 10. The Appleton Court, for example, did not find it problematic that the agency's backlog "decreased by increasing smaller margins from fiscal year 1998 to fiscal year 2001, and actually increased by 971 requests in fiscal year 2000." Id.

The DHS Disclosure Office received 652 requests in fiscal year 2004 after only receiving 283 in fiscal year 2003. (Kendrick Decl. ¶ 8). The number went up again in fiscal year 2005 to

848 requests. (Kendrick Decl. ¶ 8). Although the number of requests went up by 30 percent from 2004 to 2005, the backlog only increased by 18 percent. (Kendrick Decl. ¶ 10). Therefore, DHS was able to reduce its backlog as a percentage of the number of requests it received.

To achieve this decrease in its backlog, DHS instituted several changes. First, the DHS Disclosure Office has "hired a full-time deputy who oversees request processing." (Kendrick Decl. ¶ 9). In addition, the Director of the Disclosure Office has hired "contract support for FOIA processing purposes." (Kendrick Decl. ¶ 9). Therefore, the Disclosure Office has doubled its operation since receiving this CREW FOIA request. (Kendrick Decl. ¶ 9). As shown by the recent reduction in the backlog of requests, these operational changes have been successful.

### 3. Inadequate Resources to respond to the volume of the requests

Even though DHS has made efforts to process more FOIA requests, the increasing volume of requests and the inadequate resources have made it difficult to meet the 20 day statutory requirement. As described above, the number of requests for DHS Headquarters has gone up from 288 in fiscal year 2003 to 848 in fiscal year 2005. (Kendrick Decl. ¶ 8). That is a 295% increase in the number of requests in just two years. That nearly three-fold increase in requests does not even factor in DHS's difficulties in responding to FOIA requests during its formation. The Headquarters began with no FOIA staff and lacked resources, including an electronic filing system, to adequately respond to requests at the beginning of 2003. (Kendrick Decl. ¶ 8). DHS, therefore, has not only had to respond to the vast increase in requests but has also had to reduce the large backlog caused by that first year.

Although DHS has been able to reduce its backlog, it still has inadequate resources to deal with such a volume. The DHS Disclosure Office had only one contract support staff at the

time of the CREW request. (Kendrick Decl. ¶ 7). Even though it has been able to double its staff, that still is not enough support to deal with the vast amount of information requested beyond what Congress anticipated. See Open Am., 547 F.2d at 616. The DHS Headquarters FOIA staff has received 720 requests just since the time CREW dated its initial letter. (Kendrick Decl. ¶ 14). Even though DHS has since been able to close 501 FOIA/Privacy Act requests, it still has not had enough personnel. (Kendrick Decl. ¶ 14). For example, DHS had one quarter the number of staff working on FOIA in fiscal year 2004 compared to that of the Department of Justice. (Kendrick Decl. ¶ 10); Dept. of Justice FOIA 2004 Annual Report at http://www.usdoj.gov/oip/annual_report/2004/04foiapg9.htm. DHS has since made efforts to get more staff by actually doubling the operation, but high turnover has required taking time away from processing requests and devoting that time to training. (Kendrick Decl. ¶ 9, 10).

      Besides being a FOIA processor, the Director of the Disclosure Office has many other duties. These duties include developing FOIA process guidelines, revising regulations, representing DHS FOIA at senior level meetings, improving the FOIA processing computer system, and coordinating the FOIA program within the Department and all of its components. (Kendrick Decl. ¶ 7) . The latter duty is another example of why it is so difficult to meet the statutory requirements and why exceptional circumstances exist particularly for DHS, a conglomerate of many components that were once part of other agencies. The example of the CREW request is emblematic of what is required. Besides DHS Headquarters having possible responsive documents, *six* other components have to do searches and compile documents. (Kendrick Decl. ¶ 12). These components generally respond to FOIA requests on their own but because of the need to ensure consistency in the release of documents, DHS Headquarters must

coordinate the response. (Kendrick Decl. ¶ 13).

### C. The Department of Homeland Security is entitled to a stay of Ninety Days

DHS Headquarters has demonstrated that it has acted with due diligence by enacting a first-in, first out policy and by adding personnel to deal with the deluge of a tripling of FOIA requests in just two years. These efforts more than meet the standard for "extraordinary circumstances" as defined by law. See Open Am., 547 F.2d at 616. In addition, the Dislosure Office has shown that it has reduced the backlog of FOIA request as contemplated by Electronic Freedom of Information Act Amendments of 1996. 5 U.S.C. § 552(a)(6)(C)(ii).

DHS is committed to following its first-in, first-out policy so as to maintain a policy of fairness, and to not penalize those FOIA requesters who do not resort to litigation. (Kendrick Decl. ¶ 17). Even adhering to this policy, DHS anticipates that only an additional ninety days are needed to finish processing. (Kendrick Decl. ¶ 17). Therefore, Defendant asks this Court to the stay the proceedings so as to ensure a thorough and comprehensive response to Plaintiff's demands.

These ninety days are necessary so as to maintain an orderly process of producing documents in a first-in, first-out manner. In addition, it will be necessary for the components to complete all of the work that they need to do for this request in order to get the documents ready for DHS Headquarters. (Kendrick Decl. ¶ 15). Only ninety days are required because DHS Headquarters has already identified responsive contracts and passed on that information to the relevant components. (Kendrick Decl. ¶ 15). Nevertheless, this particular FOIA request requires internal coordination of multiple components. (Kendrick Decl. ¶ 16). This stay of the proceedings is necessary for Defendant to be fully responsive to Plaintiff's request and to enable

Defendant to move for summary judgment.

In the alternative, this Court may elect to extend the deadline for filing a dispositive motion. This Court may find it unnecessary to stay the proceedings, and instead believe that an extension of ninety days is more appropriate. This extension would provide sufficient time for Defendant to be fully responsive to Plaintiff's request and enable Defendant to move for summary judgment.

## **CONCLUSION**

For the reasons set fort above, this Court should grant Defendant's Motion For a Stay of Proceedings until February 14, 2006 or, in the alternative, extend the deadline for a dispositive motion until that date.

Dated: November 8, 2005

Respectfully submitted,
PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

_/s/_____
ELIZABETH J. SHAPIRO (D.C. Bar 418925)
Assistant Branch Director
U.S. Department of Justice
Civil Division, Federal Programs Branch
Mailing Address
P.O. Box 883
Washington, D.C., 20044
Delivery Address
20 Massachusetts Ave., NW., Room 7152
Washington, DC 20001
Telephone: (202) 514-5302
Fax: (202) 616-8470
Elizabeth.Shapiro@usdoj.gov

COUNSEL FOR DEFENDANT