IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. 1:05CV01801 |

**DECLARATION OF J. ANTHONY KENDRICK**

I, J. Anthony Kendrick, hereby declare and state as follows:

(1)  I am the Director of Departmental Disclosure for the Department of Homeland Security (DHS), Washington, D.C. 20528.  I have held this position since May 2004.  At the time I assumed this position; Department Headquarters was little more than a year old and had opened its doors in 2003 with a significant Department-wide Freedom of Information Act (FOIA) program workload to be accomplished as quickly as possible.  Prior to my arrival, the operation of the DHS Headquarters FOIA program had been under the supervision of an Acting Disclosure Officer who had been assisted sporadically by DHS detailees and who had other non-FOIA related duties to perform.

(2)  I have had many prior years of experience with a Freedom of Information Act/Privacy Act (FOIA/PA) program.  In 1988, I became a FOIA specialist, although for twelve years previously, I had FOIA responsibilities as an active duty and reserve officer with the Navy and as a government public affairs professional.  As a naval reserve officer I developed and

conducted a FOIA seminar training program. In 1991, I was the acting FOIA Officer for a component of the Department of Agriculture during the vacancy of the FOIA Officer position. In 1994, I was the FOIA Officer for the Indian Health Service until the reorganization of the headquarters of that agency, at which time I delegated FOIA responsibilities to another office. Even after that reorganization, I remained the FOIA Officer for media FOIA requests and continued to consult with the FOIA program on FOIA cases and procedures. During my time at the Indian Health Service I was also the backup to the Public Health Service FOIA Officer for conducting FOIA training. In 1998, I completed my thesis on the subject of FOIA and government communications and received my degree in journalism.

**Department of Homeland Security Freedom of Information Staff Background**

(3) My current duties at DHS include overall management of the FOIA/PA program for the Department, including processing FOIA requests received by DHS Headquarters. I also consult with other DHS offices at Headquarters, and with DHS components, on release determinations. My staff is responsible for processing FOIA requests for three DHS directorates and their subcomponent offices. In total that includes approximately 14 subcomponent offices within the Office of the Secretary, 7 subcomponent offices within the Office of the Under Secretary for Management, and the immediate Office of the Undersecretary for Border and Transportation Security. Our FOIA responsibilities far exceed the FOIA responsibilities of any other FOIA Officer in any of the DHS components. Due to the nature of my official duties, I am familiar with the procedures followed by DHS in responding to requests for information from its files pursuant to the provisions of the FOIA. I make this declaration on personal knowledge and on information I have received in the performance of my official duties.

**Citizens for Responsibility and Ethics in Washington January 11, 2005, FOIA Request**

(4) By letter dated January 11, 2005, plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") submitted a FOIA request for documents pertaining to communications by offices and employees of DHS with public affairs firms and their employees. CREW also requested copies of any DHS contracts with public affairs firms. (A copy of this request letter is attached to this declaration as Attachment 1.) My staff acknowledged this request by letter dated January 24, 2005. The letter advised plaintiff that its request was assigned reference number DHS/OS/PO 05-200 and that it would be processed according to order of receipt. (A copy of this acknowledgment letter is attached to this declaration as Attachment 2.)

### DHS FOIA Processing

(5) Pursuant to DHS interim Freedom of Information Act and Privacy Act regulations, published in the Code of Federal Regulations at 6 C.F.R. § 5.5, DHS generally processes FOIA requests according to their order of receipt. This method is the most equitable for all FOIA requesters. The regulations allow a DHS component to use multitrack processing, by distinguishing between simple and complex requests based on the amount of work and/or time needed to process the request, including limits based upon the number of pages involved. Because the plaintiff's request sought contracts, which, pursuant to Executive Order 12,600 require submitter notice, and because the request sought documents authored by DHS personnel in multiple components, which could necessitate significant search time as well as adequate time for intra-agency consultations, a FOIA program specialist assigned the request to the complex track. At the time of receipt of plaintiff's request, 86 complex requests were in the FOIA queue ahead of this request.

(6) Processing requests begins with a determination by the FOIA staff of which component or program offices may have responsive documents. If a component is determined to

have responsive documents, then the request is referred to the component's FOIA officer who will process the request and respond directly to the requester. The request will then become part of the FOIA workload of that component. For FOIA requests that concern the DHS Headquarters FOIA staff, I am ultimately responsible for processing decisions, including the initiation of appropriate document searches and the line-by-line examination of responsive records.

     (7) There are several variables that affect agency responses to FOIA requests. An important variable is the level of staffing of FOIA personnel and the amount of resources available. There were 108 pending FOIA requests at the time the CREW request was received, in two processing tracks (simple and complex). The vast majority were in the complex track. When the CREW request was received, I functioned as the sole full-time FOIA processor in addition to my many other operational and functional duties. These duties include developing and issuing FOIA processing guidelines for the Department, revising DHS FOIA regulations and management directives, coordinating the FOIA program for the Department, advising and answering FOIA issues raised by single or multiple components, assessing proposed documents for potential FOIA consequences and recommending a course of action, representing the DHS FOIA program at senior level and interdepartmental meetings, and taking a lead role in the Department-wide initiative to place all FOIA processing within one FOIA processing computer system. In addition, as a member of the DHS Privacy Office, I also have had support responsibilities for Privacy Office initiatives and priorities. I was assisted with FOIA processing responsibilities by one contract support staff at the time of the CREW request. We exercised all due diligence in handling this workload, but because of the press of the many other initiatives in which I was involved and the continuing receipt of FOIA requests (720 since January 11, 2005), my processing efforts did not always receive my exclusive attention.

(8) The FOIA workload of my staff has steadily increased. When the agency began operations at the beginning of 2003, its component organizations brought with them a pre-existing FOIA backlog. Additionally, the Headquarters Office itself received numerous FOIA requests by mail for agency documents and about 500 electronic FOIA requests, submitted by following a link on the DHS website, before a full-time Director of Departmental Disclosure & FOIA Officer was hired. The Headquarters Office, however, began with no FOIA staff in place and subsequently relied on a temporary Director of Departmental Disclosure as well as intermittent detailees. Moreover, because DHS was in a formative stage, searching for documents was a difficult task due to the unavailability of electronic filing systems and other resource and personnel constraints. DHS did the best that it could under the circumstances, but the public expected no less from its FOIA operations than from any other agency, despite the fact that as a new agency, DHS was not sufficiently equipped to deal with the crush of FOIA business. In FY 2003, DHS Headquarters Office received 283 requests, not counting the electronic requests mentioned above; in FY 2004, that number more than doubled to 652 requests. For FY 2005, we received 848 requests; another 30 percent increase from the previous year. While the number of incoming requests has escalated dramatically, staffing increases, as explained below, have not been sufficient to handle the demand. Because DHS programs are frequently in the news, moreover, the demand for information from DHS is not likely to abate any time in the near future.

(9) Since the time of receipt of the CREW FOIA request, I have taken several steps to augment the FOIA resources at DHS Headquarters. In April 2005, I hired a full-time deputy who oversees request processing, and in subsequent months I arranged for additional contract support for FOIA processing purposes. At any given time, my staff now has an average of two contract FOIA processors. Thus, we have doubled the size of our operation.

(10) The staff, though, is still significantly smaller than comparable FOIA staffs in other Federal agencies of comparable size. For FY 2004, the latest year for which statistics are available, the Department of Justice, for example, had 8 people working full time on FOIA matters for the senior management offices of the agency. By contrast DHS had a total of 2 people during the same time period. Turnover among my contract staff, moreover, requires constant training for new personnel. Nevertheless, with this augmented staff, we are making significant progress in reducing the number of outstanding FOIA requests for which answers are overdue in an orderly fashion based on the principle of first-in, first-out. For FY 2004 we reported in our Annual FOIA Report a pending backlog of 245 requests. We currently have 288 requests in our backlog. Therefore, although the backlog has increased by about 18 percent, we have received nearly twice that amount in new requests, so we are making substantial progress in reducing our backlog.

**Action on the CREW Request**

(11) Another variable that determines the speed with which FOIA requests can be answered is the timeliness of records searches accomplished by DHS program offices, most of which are attempting to marshal their limited staff resources in a way that maximizes their mission-support activities. My small staff does not have the time to devote to record searches in other offices so we depend on those offices to provide us records as soon as possible in response to requests. Sometimes obtaining these records can be a protracted process because of the press of other agency business.

(12) The Headquarters FOIA staff received the CREW FOIA request on January 11, 2005. We promptly initiated searches for records. On January 24, 2005, we determined that contracts with public affairs firms would likely have the DHS Public Affairs Office as the project officer. Therefore, my FOIA staff requested that a search for responsive documents be initiated

by the DHS Public Affairs Office. The search took longer than we anticipated, but we followed up the search request with Public Affairs on March 29, 2005, on July 14, 2005, and again on September 15, 2005. A list and description of possible responsive documents was received on September 29, 2005. This list suggests that in addition to responsive records at DHS Headquarters, for which my staff is responsible, responsive records may also exist in the following DHS components: United States Citizenship and Immigration Services; Federal Emergency Management Agency; Bureau of Immigration and Customs Enforcement; Transportation Security Administration; United States Coast Guard; and the US-VISIT Program.

    (13) My staff sent a memorandum dated October 5, 2005, to these components with relevant contract information and directions for necessary follow-up and response to this request. Although DHS components generally respond to FOIA requests for their own documents independently from DHS Headquarters, my staff will be coordinating the component responses to plaintiff's request to ensure consistency and completeness of release. Several of the components have identified the records and need only complete the processing. Others have substantially more work to do, but it appears that all components can complete action on this request and our staff can review the release determinations and coordinate a response to plaintiff in the next 90 days.

    (14) Regarding the FOIA processing workload for my staff and anticipated completion of the CREW request; since January 11, 2005, the DHS Headquarters FOIA staff has received 720 requests. The FOIA staff has closed 501 FOIA/Privacy Act requests (this includes open requests before January 11, and those received since January 11). There are currently 288 open requests for which my staff has responsibility. The CREW request is now number 97 in this first-in-first-out queue. However, of the total of all open requests, my staff has received responsive documents to process for only 14 FOIA requests at this time. Because the CREW

request is one of those 14 -- specifically, it is number 12 -- the CREW request can be processed after my staff completes work on the 11 ahead of it. Based on our first-in-first-out policy, I anticipate being able to process the documents for which my staff is responsible within the next 30 days after which we will issue a final response.

     (15) I fully expect and encourage that interim releases of records will be made to plaintiff throughout this 90 day period. As a result of our search of Headquarters for responsive documents, we obtained copies of responsive contracts as well as copies of responsive contracts of the various components and have distributed them to the appropriate components for processing. The component offices, however, must still ascertain, by conducting a records search, whether they have communications about these contracts that would respond to plaintiff's request. As mentioned above, we have notified plaintiff of this by letter dated October 5, 2005. (A copy of this letter is attached to this declaration as Attachment 3.)

     (16) I have made significant progress in addressing the FOIA workload by hiring additional staff and working diligently to respond to the requests that we have received. Because of the nature of DHS's mission, however, our workload often involves complicated requests that implicate multiple offices. In this case, in fact, the responsive documents implicate multiple components that will require, at a minimum, internal coordination and review. We are committed to providing as thorough a response as possible to this and every FOIA request, but given the number of pending FOIA requests ahead of plaintiff's, the significant workload of the agency generally, and the substantial FOIA workload of the Department, I believe that a stay of these proceedings is warranted and should allow for the orderly processing of this request.

     (17) There are other FOIA requesters who deem their requests to be of equal urgency and are ahead of CREW in the queue. The first-in-first-out process for handling such requests was established out of necessity as a fair and reasonable means by which to manage FOIA

caseloads. While extenuating circumstances may and often do arise, I believe it is important to preserve the orderly nature of this processing standard in order to treat all FOIA requesters equitably and in a way that does not encourage litigation. Permitting this request or any other one to be processed ahead of those now in line simply because the plaintiff has filed suit would send the wrong message to the FOIA community and potentially clog the courts with lawsuits. CREW did not ask for expedited review in this case. For these reasons, I believe a stay of these proceedings for 90 days is necessary and appropriate and should allow for the orderly completion of the work on plaintiff's request.

    I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

    Signed this 8th day of November, 2005.


J. ANTHONY KENDRICK

Attachment 1

Case 1:05-cv-01801-ESH    Document 5-6    Filed 11/08/2005    Page 10 of 18

## Citizens for Responsibility and Ethics in Washington

January 11, 2005

Departmental Disclosure Officer
Department of Homeland Security
Washington. D.C. 20528



BY FAX: 202-772-5036

Re:   Freedom of Information Act Request

Dear Officer:

  Citizens for Responsibility and Ethics in Washington("CREW") makes this request for records, regardless of format, medium, or physical characteristics, and including electronic records and information, audiotapes, videotapes and photographs, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552 et seq.

  This request relates to any contact, dating from January 1, 2001, that any office of the Department of Homeland Security may have had with any external public affairs firms including, but not limited to Ketchum Public Affairs and Fleischman-Hilliard Public Affairs. Specifically, we request the release of any contracts the Department of Homeland Security may have entered into with any public affairs firm. We further request records of contacts any Department of Homeland Security employee may have had with any employee of any public affairs firm with which the Department of Homeland Security had a contractual relationship.

  Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including electronic records, audiotapes, videotapes and photographs. Our request includes any telephone messages, voice mail messages, daily agenda and calenders, information about scheduled meetings, whether in person or over the telephone, agendas for those meetings, participants included in those meetings, minutes of any such meetings, the topics discussed at those meetings, e-mail regarding meetings, e-mail or facsimilies sent as a result of those meetings, and transcripts and notes of any such meetings.

  There is no basis for claiming that the records requested herein are exempt from immediate disclosure under FOIA. Each of these records is described by 5 U.S.C. §552(a)(2) as information an agency is required to make available to the public and the United States Attorney General has indicated that the Justice Department will only defend a decision not to disclose documents where a "sound legal basis" for non-disclosure exists. Memorandum from Attorney General John Ashcroft to Heads of Departments and Agencies on the Freedom of Information Act, October 12, 2001.

  If, however, it is your position that any portion of the requested records is exempt from disclosure, CREW requests that you provide it with an index of those documents as required under Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974). As you are aware, a Vaughn index must describe each document claimed as exempt with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under

---

11 DuPont Circle, N.W., 2nd Floor, Washington, D.C. 20036  •  202-588-5565 (phone)  •  202-588-5020 (fax)  •  msloan@citizensforethics.org

FOIA Officer
January 11, 2005
Page Two

FOIA." <u>Founding Church of Scientology v. Bell</u>, 603 F.2d 945, 949 (D.C. Cir. 1979). Moreover, the <u>Vaughn</u> index must "describe <u>each</u> document or portion thereof withheld, and for <u>each</u> withholding it must discuss the consequences of supplying the sought-after information." <u>King v. U.S. Dep't of Justice</u>, 830 F.2d 210, 223-24 (D.C. Cir. 1987) *(emphasis added)*. Further, "the withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'" <u>Id.</u> at 224 (citing <u>Mead Data Central v. U.S. Dept. of the Air Force</u>, 566 F.2d 242, 251 (D.C. Cir. 1977)).

In the event that some portions of the requested documents are properly exempt from disclosure, please disclose any reasonably segregable nonexempt portions of the requested documents. *See* 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt. . . "); *see also* <u>Schiller v. National Labor Relations Board</u>, 964 F.2d 1205, 1209 (D.C. Cir. 1992); 15 C.F.R. §4.6. If it is your position that a document contains non-exempt segments but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt and how the material is dispersed throughout the document. <u>Mead Data Central</u>, 566 F.2d at 261. Claims of nonsegregability must be made with the same degree of detail as required for claims of exemptions in a <u>Vaughn</u> index. If a request is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

### Fee Waiver Request

In accordance with 5 U.S.C. §552(a)(4)(A)(iii), CREW requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government and the disclosures will likely contribute to a better understanding of relevant governmental procedures by CREW and the general public in a significant way. Moreover, the request is primarily and fundamentally for non-commercial purposes. 5 U.S.C. §552(a)(4)(A)(iii), 15 C.F.R. §4.11(k)(1). *See eg.*, <u>McClellan Ecological v. Carlucci</u>, 835 F.2d 1282, 1285 (9th Cir. 1987). Specifically, these records are likely to contribute to the public's understanding of the Department of Homeland Security's efforts to shape public opinion.

CREW is a non-profit corporation, organized under section 501(c)(3) of the Internal Revenue code. CREW is committed to the protection of the citizen's right to be aware of the activities of government officials and to ensuring the integrity of those officials. CREW is dedicated to empowering citizens to have an influential voice in government decisions and in the governmental decision making process. CREW uses a combination of research, litigation, and advocacy to advance its mission. The release of information garnered through this request is not

FOIA Officer
January 11, 2005
Page Three

in CREW's financial interest. CREW will analyze the information responsive to this request, and will likely share its analysis with the public, either through memorandums or reports.

Under these circumstances, CREW fully satisfies the criteria for a fee waiver.

### Conclusion

Please respond to this request in writing within twenty (20) days as required under 5 U.S.C. §552(a)(6)(A)(I). If all of the requested documents are not available within that time period, CREW requests that you provide it with all requested documents or portions of documents which are available within that time period.

If you have any questions about this request or foresee problems in fully releasing the requested records within the twenty day period, please call me within that time period. I can be reached at (202)-588-5565. Please send the requested documents to Melanie Sloan, Citizens for Responsibility and Ethics in Washington, 11 Dupont Circle, N.W., 2nd Floor, Washington, D.C. 20036.

Sincerely,

Melanie Sloan
Executive Director
Citizens for Responsibility and Ethics in Washington

Attachment 2



Privacy Office, Room 3310
**U.S. Department of Homeland Security**
Washington, DC 20528

January 24, 2005

Melanie Sloan
Citizens for Responsibility and Ethics in Washington
11 Dupont Circle, N.W., 2nd Floor
Washington, DC 20036

Re: **DHS/OS/PO 05-200**

Dear Ms. Sloan:

This acknowledges receipt of your Freedom of Information Act (FOIA) request to the Department of Homeland Security (DHS). We received your request on January 11, 2005. You requested documentation of any contact that the DHS may have had with any external public affair firms including, but not limited to, Ketchum Public Affairs and Fleischman-Hilliard Public Affairs. You are specifically requesting any contracts that were entered into by the DHS with these firms.

Your request for a fee waiver is granted.

Your request has been assigned reference number **DHS/OS/PO 05-200**. Please refer to this identifier in any future correspondence. As stated in the DHS Interim Freedom of Information Act and Privacy Act regulations (Title 6, Chapter I, Part 5A, Section 5.5), the Department processes FOIA requests according to their order of receipt. Nevertheless, I want to assure you that we will respond to your request as soon as we can.

Sincerely,

J.A. Kendrick
Director, Departmental Disclosure & FOIA

www.dhs.gov

Attachment 3

U.S. Department of Homeland Security
Arlington, Virginia 22202


Homeland Security

Privacy Office DHS-D3

October 5, 2005

Melanie Sloan
Citizens for Responsibility and Ethics in Washington
11 Dupont Circle, N.W., 2nd Floor
Washington, DC 20036

Re: **DHS/OS/PO 05-200**

Dear Ms. Sloan:

This further responds to your January 11, 2005, Freedom of Information Act (FOIA) request to the Department of Homeland Security (DHS). You requested:

1. documentation of any communications from January 1, 2001, to present, that DHS had with any public affairs firms with which DHS has a contract, including Ketchum Public Affairs and Fleishman-Hillard Public Affairs; and
2. copies of all DHS public affairs contracts from January 1, 2001, to present.

The scope of Item 1 above, lacked specificity and was too broad for an effective search to be undertaken; therefore, we have interpreted your request to be for documentation of any communications between DHS Contract Project Officers with members of public affairs firms. If you feel a search for records responsive to this interpretation will not capture the records you are seeking, please contact us to further refine the scope of our search.

Thus far our search for responsive records indicates the existence of the following public affairs contracts:

   a. HSHQ-05-F-R0006 – contract for US-VISIT informational materials
   b. EMW-2003-BP-0471 – contract for communications plan regarding Citizen Corps and Community Response Teams Program
   c. EME-1999-CO-0557 – contract for development and implementation of a fire safety action plan
   d. EMW-2003-DO-0173 – contract to assemble materials on Citizens Corps program for further marketing of the program
   e. HSTS-03-04-D-COM-004 (through -006) – contracts to provide technical crews for the TSA Satellite Media Tours or Radio Media Tours, which educate the public on travel related security procedures
   f. DTSA-20-03-P-00570 - contract to provide technical crews for the TSA Video News Releases, Satellite Media Tours or Radio Media Tours, which educate the public on travel related security procedures

www.dhs.gov

The above contracts are administered in various DHS components. We will forward your request to the appropriate components for direct response to you. Any questions related to the status of your request forwarded to a component should be addressed to that component. Contact information follows.

As it relates to Item a, we are referring your request to the FOIA/PA Officer, Barbara Harrison, for the U.S. – VISIT Program, Border and Transportation Security, Washington, D.C. 20528, for processing and direct response to you. You can reach the U.S. – VISIT Program directly at (202) 298-5200.

As it relates to Items b, c, and d, we are referring your request to the FOIA Officer for Emergency Preparedness and Response (EP&R)/Federal Emergency Management Agency (FEMA), Jeff Ovall, for processing and direct response to you. You may contact FEMA via telephone at 202-646-3051 or in writing at 500 C Street, S.W., Washington, DC 20472.

As it relates to Items e and f, we are referring your request to the FOIA Officer for the Transportation Security Administration (TSA), Catrina Pavlik, for processing and direct response to you. You may contact TSA via telephone at 571-227-2300 or in writing at the Office of Security, West Bldg, 11th Floor, 701 South 12th Street, Arlington, VA 22202-4220.

In addition, our search indicates that there are other components that may have responsive records. Therefore we are forwarding your request to those components for search and direct response to you. Those offices include:
- United States Coast Guard (USCG), FOIA Officer Donald Taylor, 202-267-6929, 2100 Second Street, SW, Washington, DC 20593;
- United States Immigrations and Customs Enforcement (ICE), FOIA Officer Gloria Marshall, 202-616-7489, 425 Eye Street, CAB Bldg., Room 4038, Washington, DC 20536.
- United States Citizenship and Immigration Services (USCIS), FOIA Officer Magda Ortiz, 202-272-8269, 111 Massachusetts Avenue, ULLICO Building, 2nd Floor, Washington, DC 20529.

Our office will respond for the responsive records we have located within the Office of the Secretary and the Office of the Undersecretary of Management.

Your request was assigned reference number **DHS/OS/PO 05-200**. Please refer to this identifier in any future correspondence. We acknowledge that our office granted your fee waiver request on January 24, 2005. This fee waiver will be honored by all responding components. As stated in the DHS Interim Freedom of Information Act and Privacy Act regulations (Title 6, Chapter I, Part 5A, Section 5.5), the Department processes FOIA requests according to their order of receipt. Nevertheless, I want to assure you that we will respond to your request as soon as we can.

Sincerely,

Catherine M. Papoi
Deputy Director, Departmental Disclosure & FOIA