UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
CITIZENS FOR RESPONSIBILITY AND           :
ETHICS IN WASHINGTON                      :
11 Dupont Cir., N.W.                      :
Washington, D.C.  20036                   :
                                          :
      Plaintiff                           :
                                          :  No. CV-05-01801 (ESH)
   v.                                   :
                                          :
UNITED STATES DEPARTMENT OF               :
HOMELAND SECURITY                         :
Washington, D.C.  20528                   :
                                          :
      Defendant                           :
_____  :

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR A STAY
OF THE PROCEEDINGS OR, IN THE ALTERNATIVE, AN EXTENSION OF TIME**

      Eleven months ago Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") filed a Freedom of Information Act ("FOIA") request with Defendant U.S. Department of Homeland Security ("DHS").  After waiting months and months with no response, CREW filed its complaint in this action on September 12, 2005.  To date, CREW has yet to receive a single document in response to its request.

      It now appears that no response will be forthcoming for several more months if, as DHS has requested, it is granted a stay of all proceedings until February 14, 2006.  Granting this request, however, would be a gross miscarriage of justice.  Not only has DHS not acted diligently in responding to CREW's FOIA request, but it has been tardy in responding to an order of this Court and has withheld facts that bear materially on its request for a stay. Accordingly, its motion for a stay or, alternatively, for an extension of time should be denied.

**BACKGROUND**

On January 11, 2005, CREW sent a FOIA request to DHS for records of any contacts between the agency and any external public affairs firms, including but not limited to Ketchum and Fleishman Hillard.  CREW also requested records of any contracts DHS had with any public affairs firm, as well as records of any contacts between any DHS employee and the employee of any public affairs firm with which DHS had a contractual relationship.  *See* Exhibit F to Complaint.

CREW's FOIA request arose out of an unfolding story about government misuse of appropriated funds to pay for the creation and dissemination of government propaganda.  On January 7, 2005, *USA Today* reported that conservative commentator Armstrong Williams had been paid $240,000 by the Department of Education to promote the Bush administration's No Child Left Behind law.  Greg Toppo, <u>White House paid journalist to promote law; Ethics of No Child Left Behind deal questioned</u>, *USA Today*, January 7, 2005 (Exhibit A to Complaint).  The contract with Williams was filtered through the Ketchum public affairs firm.  <u>Id.</u>

This was only one of several attempts by the Bush administration to hide the source of government propaganda.  Prior to the revelations concerning Armstrong Williams, the Government Accountability Office ("GAO") found that in two other incidents, federal agencies had violated the prohibition on publicity and propaganda by hiring public relations firms to produce covert propaganda.  In May 2004, GAO found that video news releases created by Ketchum in support of the newly enacted Medicare law and distributed by the Department of Health and Human Services constituted illegal covert propaganda because the releases failed to

2

reveal the source of the information.  U.S. Government Accountability Office, <u>Department of Health and Human Services, Centers for Medicare and Medicaid Services – Video News Releases</u>, GAO/B-302710 (May 19, 2004).  And in January 2005, GAO found that public relations firm Fleishman Hillard had created video news releases that were distributed by the Office of National Drug Control Policy.  U.S. Government Accountability Office, <u>Office of National Drug Control Policy – Video News Release</u>, GAO/B-303495 (Jan. 4, 2005).

After the Armstrong Williams contract became public, it was discovered that syndicated columnist Maggie Gallagher, who frequently wrote pieces supporting the Bush administration's $300 million initiative encouraging marriage, had received a $21,500 contract with the Department of Health and Human Services.  Howard Kurtz, <u>Writer Backing Bush Plan Had Gotten Federal Contract</u>, *The Washington Post*, January 26, 2005 (Exhibit C to Complaint).  Three days later, the Department of Health and Human Services disclosed that a third columnist, conservative Mike McManus, had been paid $10,000 to assist in promoting the Bush administration's marriage initiatives. Sibhan McDonough, <u>Another Columnist Was Hired to Promote White House Policy</u>, *Chicago Tribune*, January 29, 2005 (Exhibit D to Complaint).

In light of these practices, GAO issued an opinion on February 17, 2005, reminding all heads of department, agencies and others concerned, of the constraints imposed by the publicity or propaganda prohibition on the use of prepackaged news stories and advising vigilance "to assure that agencies' activities comply with the prohibition."  U.S. Government Accountability Office, <u>Prepackaged News Stories</u>, GAO/B-304272 (Feb. 17, 2005).  In response, the Bush administration rejected the conclusions of these GAO opinions, taking the position that this kind of covert propaganda is legal.  Christopher Lee, <u>Administration Rejects Ruling On PR Videos</u>,

*The Washington Post*, March 15, 2005 (Exhibit B to Complaint).

On September 12, 2005, nine months after filing its FOIA request, CREW filed the complaint in this action. CREW's complaint was based on DHS's complete failure to comply with its obligations under the FOIA, either by releasing to CREW the documents it had requested or otherwise claiming exemptions for documents DHS was withholding. Several weeks later, before DHS filed an answer to the complaint, the agency sent CREW a letter, dated October 5, 2005, advising CREW for the first time that DHS considered CREW's request for documents of communications between DHS and public affairs firms to "lack[] specificity" and be "too broad for an effective search to be undertaken." Letter from Catherine M. Papoi, Deputy Director, Departmental Disclosure & FOIA, to Melanie Sloan, CREW, dated October 5, 2005 (Attachment 3 to Declaration of J. Anthony Kendrick ("Kendrick Decl.")). DHS also identified six contracts it had identified to date that were responsive to CREW's request, as well as a number of components within DHS to which it was referring CREW's request.

One week later, on October 12, 2005, DHS filed an answer to CREW's complaint. Notably absent from DHS's answer was any mention of the need for a stay or additional time to process the request. The following day this Court issued an Order noting that Defendant's answer "raises several grounds for dismissal," but that Defendant "has not filed a dispositive motion." Order of October 13, 2005. Accordingly, the Court directed DHS to file a motion to dismiss or for summary judgment on or before November 14, 2005. Id.

To date, DHS has not complied. Instead, on November 8, 2005, DHS filed a motion for a stay of the proceedings for three months, until February 14, 2006, so that DHS can have another 90 days in which to process CREW's request. *See* Defendant's Memorandum in Support of a

Motion for a Stay of the Proceedings or, in the Alternative, an Extension of Time (D's Mem.). If granted, DHS would have a total of 13 months to process the request, well in excess of the twenty working days afforded by the FOIA. Alternatively, DHS seeks an extension of time for DHS to file a dispositive motion.

## ARGUMENT

### 1. DHS's Unreasonable Delay In Processing CREW's FOIA Request Should Not Be Rewarded By Granting DHS Its Requested Stay Or, Alternatively, An Extension Of Time.

Under the Freedom of Information Act, an agency may be entitled to a stay of any court proceedings to allow the agency to complete its processing of the FOIA request at issue, but only if the agency can demonstrate that "exceptional circumstances exist and that the agency is exercising due diligence in responding to the request." 5 U.S.C. §552(a)(6)(C)(i).

DHS argues here that it has met the "due diligence" requirement because it "*generally* processes FOIA requests according to their order of receipt." Kendrick Decl., ¶5 (emphasis added). As further proof of its due diligence, DHS points to the steps it took upon receiving CREW's request. Specifically, within weeks of receiving the request, DHS's Disclosure Office determined that its Public Affairs Office would likely have responsive contract documents, and submitted the request to that office. Id. at ¶12. According to DHS, it acted diligently because more than eight months later the Disclosure Office was finally able to obtain from the Public Affairs Office "[a] list and description of *possible* responsive documents." Id. (emphasis added). And while DHS acknowledges that "[t]he search took longer than we anticipated," it attempts to justify the delay by pointing out that periodically it would follow-up with Public Affairs. Id.

In short, DHS is claiming it meets the due diligence requirement for a stay based on a

record of eight months spent tracking down a list of possible responsive documents in only one component of DHS.  That DHS has failed to substantiate its claim of due diligence is self-evident.  Equally egregious are DHS's efforts to locate responsive documents from other DHS components.  While DHS claims to have "promptly initiated searches for records" upon receipt of CREW's FOIA request, id., in fact DHS initially asked only one office, Public Affairs, to search and then only for documents that would respond to one category of CREW's multi-category request, contracts with public relations firms.  It was not until nine months later, when DHS received a list from Public Affairs suggesting other components that might have responsive records, that DHS contacted those components about CREW's request.  Id. at ¶¶ 12-13.[1]  This is a story of delay and foot-dragging, not due diligence.  The limited actions DHS has taken to date simply cannot excuse the fact that CREW has yet to receive a single document from DHS in response to CREW's FOIA request.

    Moreover, what DHS has not told the Court also highlights the fact that DHS has not been proceeding with due diligence.  DHS's counsel has represented to CREW's counsel that DHS also received a request for documents on this same subject from the Government Accountability Office.  *See* Declaration of Anne L. Weismann (attached as Exhibit 2).  While DHS's counsel did not know when GAO's request was satisfied, id. at ¶4, the fact that DHS has already gathered documents responsive to CREW's request is certainly relevant in ascertaining how much time the agency truly needs to complete processing the FOIA request.  Notably absent

---

[1] One of those components, the Transportation Security Administration, did not acknowledge receipt of CREW's FOIA request until October 18, 2005.  *See* Letter From Catrina M. Pavlik, Associate Director, Freedom of Information Act and Privacy Act Division, to Melanie Sloan, CREW, dated October 18, 2005 (attached as Exhibit 1).  CREW has yet to hear from any other component to which DHS sent CREW's request.

from the Kendrick Declaration, however, is any mention of the GAO request, much less a time calculation that takes into account the fact that documents have already been assembled for another similar request.

DHS also attempts to justify its stay on the basis that "extraordinary circumstances" exist, namely inadequate resources to respond to the growing volume of requests it receives. DHS also points to the fact that it has been successful in reducing its backlog, and processes requests on a first-in, first-out basis. D's Mem., pp. 7-10. But these arguments are not responsive to the factual situation DHS itself has described. According to DHS, CREW's request is not sitting in a queue, to be acted upon when it comes to the head of the line. Instead, DHS claims it began acting on CREW's request within weeks of its receipt, by sending out search requests for responsive documents. The attendant delay has been caused by the haphazard manner in which DHS has chosen to process CREW's request, not by DHS's inability to deal with the request in the first place. Under these circumstances, a stay is not warranted.

## 2. Because DHS Has Not Acted Diligently In Responding To The Court's Order, Its Request for An Extension Should Be Denied.

DHS is seeking to be excused not only from the statutory time requirements of the FOIA, but from an Order of this Court. But, as with its stay request, DHS has not demonstrated due diligence and its request for an extension of time should therefore be denied.

DHS filed its answer to the complaint on October 12, 2005. In that pleading, DHS requested that the action be dismissed with prejudice. But what DHS did not request, or even mention, was a need for more time to respond to CREW's FOIA request.

The day after DHS filed its answer the Court issued an order directing DHS to file a motion to dismiss or for summary judgment on or before November 14, 2005. The Order is

based on the fact that in its answer, DHS raised "several grounds for dismissal," but had not filed a dispositive motion.

Days before its dispositive motion was due, DHS filed stay papers, seeking an extension of time to process CREW's request. Of note, that request is virtually silent about the Court-ordered requirement that DHS file a dispositive motion. While DHS purported to seek alternatively an extension of time to file its dispositive motion, its supporting memorandum raised the issue only indirectly, stating:

> This Court may find it unnecessary to stay the proceedings, and instead believe that an extension of ninety days is more appropriate. This extension would provide sufficient time for Defendant to be fully responsive to Plaintiff's request and enable Defendant to move for summary judgment.

D's Mem. at 11. What this request overlooks is that the Court has already determined the most appropriate course for this litigation – that DHS file a dispositive motion within 30 days of its answer.

Also absent from DHS's motion is any explanation of why DHS has not come forward before this time to advise the Court that not only was DHS unable to comply with the Court's order, but that the agency could not even complete processing of CREW's request within the time-frame mandated for filing its motion. Under these circumstances, DHS has not demonstrated that it is entitled to an extension to file a dispositive motion.

DHS's likely response will be that justified or not, it simply needs more time to complete its processing of CREW's request and prepare its dispositive motion. But granting DHS's requested relief rewards, not discourages, agencies that fail to exercise due diligence. CREW has waited nearly 11 months for a response, and to date has received nothing of substance from

DHS. Indeed, it appears that DHS did not really do much of anything until CREW filed its lawsuit; only then did DHS finally send requests to the components within the agency that might have responsive documents. Under the totality of these circumstances, DHS is not entitled to a three-month extension that would effectively give the agency 13 months to process CREW's request.

## CONCLUSION

For all of the foregoing reasons, DHS's motion should be denied.

Respectfully submitted,

____/s/_____
Anne L. Weismann
(D.C. Bar No. 298190)
Melanie Sloan
(D.C. Bar No. 434584)
Citizens for Responsibility and
 Ethics in Washington
11 Dupont Cir., N.W.
Washington, DC  20036
Phone: (202) 588-5565
Fax: (202) 588-5020

Attorney for Plaintiff

Dated: November 15, 2005