## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | ) ) ) | |
| Plaintiff, | ) ) | CV-05-01801 (ESH) |
| vs. | ) ) | |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

**DEFENDANT'S REPLY MEMORANDUM**
**IN FURTHER SUPPORT OF A MOTION FOR A STAY OF THE PROCEEDINGS**
**OR, IN THE ALTERNATIVE, AN EXTENSION OF TIME**

Plaintiff has not disagreed with any of Defendant's legal analysis of what an agency must demonstrate for a stay of Freedom of Information Act (FOIA) litigation proceedings.  See 5 U.S.C. § 552(a)(6)(C)(I); Open Am. v. Watergate Special Prosecution Force, 547 F.2d 605 (D.C. Cir. 1976).  Instead, without attacking any of the legal arguments, Plaintiff Citizens for Responsibility and Ethics in Washington (CREW) instead makes factual assertions that are either incorrect or irrelevant to the case at hand.  Because Defendant Department of Homeland Security (DHS) has filed a supporting declaration making clear that it meets the legal standard for a stay, this Court should grant Defendant's Motion for a Stay of Proceedings until February 14, 2006.  See Defendant's Memorandum in Support of a Motion for a Stay of the Proceedings or, in the Alternative, an Extension of Time (Def.'s Mem.); J. Anthony Kendrick's declaration attached to Def.'s Mem. (Kendrick's Decl.).  Alternatively, this Court may grant Defendant an extension of time to file a dispositive motion in this case.

**ARGUMENT**

A.    **DHS has Acted with Due Diligence as Contemplated by** *Open America*

As explained in Defendant's opening Memorandum, DHS meets the elements of Open

America and its progeny for a stay of the proceedings.  See Open Am. v. Watergate Special

Prosecution Force, 547 F.2d 605, 616 (D.C. Cir. 1976); Appleton v. FDA, 254 F. Supp. 2d 6, 8-

10 (D.D.C. 20003); see also 5 U.S.C. § 552(a)(6)(C)(I).  DHS has demonstrated that it has acted

with due diligence.  See Def.'s Mem. 6-7.  DHS has demonstrated that is has been successful in

reducing its backlog of FOIA requests through agency reorganization initiatives.  See Def.'s

Mem. 7-8.  Finally, DHS has demonstrated that it has had inadequate resources to respond to the

volume of FOIA requests it receives.  See Def.'s Mem. 8-10.  Although Plaintiff does not

quibble with Defendant's legal analysis of what is required to demonstrate a need for a stay,

Plaintiff asserts that "these arguments are not responsive to the factual situation DHS itself has

described."  See Plaintiff's Opposition to Defendant's Motion for a Stay of the Proceedings or,

in the Alternative, an Extension of Time (Pl.'s Op.) , p. 7.  CREW's characterization of the

factual situation described by DHS, however, is incorrect and inaccurate.

The system of how DHS is processing CREW's request was already described in detail

by the Director of DHS's Disclosure Office.  See Kendrick Decl.  The system in place allows

DHS to process requests further down in the queue while waiting for responses for other

requests.  "Processing requests begins with a determination by the FOIA staff of which

component or program offices may have responsive documents."  Kendrick Decl., ¶ 6.  CREW is

incorrect when it asserts that "[a]ccording to DHS, CREW's request is not sitting in a queue, to

be acted upon when it comes to the head of the line[,]" since DHS "began acting on CREW's

request within weeks of its receipt, by sending out search requests for responsive documents."

Pl. Op., p. 7. By CREW's logic, a FOIA office should wait until it receives all of the responsive

documents, processes all of those documents, and sends all of those documents to the requester

before going to the next spot in the queue. That type of system would be terribly inefficient.

DHS followed the appropriate procedure in this case by initially determining where in

DHS there were possible responsive documents. Since DHS "determined that contracts with

public affairs firms would likely have the DHS Public Affairs Office as the project officer[,]" the

DHS Headquarters FOIA staff diligently followed up several times with the Public Affairs

Office to get the location of the pertinent documents. Kendrick Decl., ¶ 12. Within a week after

the Public Affairs Office gave the DHS Disclosure Office a list of the locations and descriptions

of possible responsive documents, DHS Headquarters sent a memorandum to the referred

components.[1]  Confining the initial search to the Public Affairs Office was a reasonable first

step before DHS Headquarters conducted the rest of the search. The Public Affairs Office's list

of documents enabled  DHS Headquarters to locate which components had responsive

documents. It would have been unreasonable to search every component inside the Department

when the Public Affairs Office would not have identified many of those components as having

responsive documents.

The final stages for processing CREW's request involves DHS Headquarters processing

---

[1]The Transportation Security Administration's acknowledged receipt on October 18, 2005 of CREW's FOIA request was less than two weeks after DHS Headquarters sent out this memorandum. See Letter from Catrina M. Pavlik, Associate Director, Freedom of Information Act and Privacy Act Division, to Melanie Sloan, CREW, dated October 18, 2005 (attached as Exhibit 1 to Pl. Op.). DHS Headquarters is coordinating the response to Plaintiff's request and has already acknowledged receipt of CREW's request, and so the other components may not have felt it was necessary to acknowledge such a receipt.

the request according to the order it is in DHS Headquarters' queue, and then DHS Headquarters

coordinating the response from the components.  It is incorrect for CREW to assert that

"[a]ccording to DHS, CREW's request is not sitting in a queue."  Pl. Op.  Mr. Kendrick in his

declaration, dated November 8, 2005, stated:

> The CREW request is now number 97 in this *first-in-first-out queue*.  However, of the
> total of all open requests, my staff has received responsive documents to process for only
> 14 FOIA requests at this time.  Because the CREW request is one of those 14 --
> specifically, it is number 12 -- the CREW request can be processed after my staff
> completes work on the 11 ahead of it.

Kendrick Decl., ¶ 14 (emphasis added).  Again, DHS Headquarters is acting in an efficient

manner by creating an additional queue for those requests that already have responsive

documents.  Since "the responsive documents implicate multiple components that will require, at

a minimum, internal coordination and review," DHS needs the ninety day period to ensure "as

thorough a response as possible."  (Kendrick Decl., ¶ 16).  This ninety day period will allow

DHS Headquarters to comply with its first-in, first-out policy and for it to coordinate the

responses from the other components.

### B.    CREW's Assertions outside of the *Open America* Context are Irrelevant

Throughout CREW's Opposition Memorandum, it makes assertions that are irrelevant to

whether DHS is entitled to a stay of the proceedings.  CREW implies that DHS is withholding

evidence of some form of government impropriety.  See Pl. Op., p. 2-4.  Beside the fact that

CREW's arguments are based on conjecture and there is no evidence that DHS has engaged in

some form of government propaganda, the subject matter of the FOIA request is irrelevant.  Cf.

Brandon v. Eckard, 569 F.2d 683, 687-688 (D.C. Cir. 1977) ("FOIA does not discriminate

among persons seeking access to materials on grounds of their particular interests in the

requested information"). Moreover, Plaintiff has never asked for expedited review of its request. (Kendrick Decl., ¶ 17). "The plaintiff bears the burden of showing a genuine need and reason for urgency in gaining access to Government records ahead of prior applicants for information." Edmond v. United States Attorney, 959 F. Supp. 1, 3 (D.D.C. 1997) (internal quotation marks omitted).

CREW is also incorrect to allege that DHS "has withheld facts that bear materially on its request for a stay." Pl. Op., p. 1. CREW confuses the requirements for responding to a Government Accounting Office (GAO) request with the requirements for responding to a FOIA request, and misunderstands how DHS must independently respond to even two similar FOIA requests. An agency's consideration of what it may redact under the FOIA exemptions is not the same for how it must respond to a request by Congress. In addition, neither Plaintiff's Opposition memorandum nor Plaintiff Counsel's declaration contend that the GAO's request on DHS was either contemporaneous or the same as CREW's request. See Pl. Op.; Declaration of Anne L. Weismann. Given these large differences, the existence of a GAO request that touches on a similar topic is largely irrelevant to whether DHS is entitled to a stay of the proceedings. Rather, the relevant legal considerations remain whether DHS Headquarters is proceeding in a first-in, first-out basis, whether DHS is reducing its FOIA backlog, or whether DHS has had inadequate resources to deal with a deluge of FOIA requests. See Open Am. v. Watergate Special Prosecution Force, 547 F.2d 605, 616 (D.C. Cir. 1976); Appleton v. FDA, 254 F. Supp. 2d 6, 8-10 (D.D.C. 20003). The only possible relevance of a similar GAO request is that such a request from Congress may assist DHS in locating some of the potentially responsive documents and may have made it possible for DHS to ask for a ninety day stay rather than for a longer stay.

Finally, CREW argues that DHS ignored a Court order and that Defendant's motion for extension of time is without merit. Neither argument is correct. First, DHS responded to this Court's order by seeking relief from the order, i.e., by filing a motion for a stay of the proceedings or, in the alternative, an extension of time. Second, the reasons for an extension of time are the same as the grounds for a motion to stay the proceedings and so it would be redundant to repeat the arguments. This Court may, in its discretion, appropriately determine to grant an extension of time rather than a stay of the proceedings. This is particularly true in light of the short amount of time that DHS seeks in order to respond to Plaintiff's request.

**CONCLUSION**

For the reasons set forth above and in Defendant's previous Memorandum, this Court

should grant Defendant's Motion For a Stay of Proceedings until February 14, 2006, or, in the

alternative, extend the deadline for a dispositive motion until that date.

Dated: November 23, 2005

Respectfully submitted,
PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

ELIZABETH J. SHAPIRO (D.C. Bar 418925)
Assistant Branch Director


_/s/_____
ADAM D. KIRSCHNER
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
Mailing Address
P.O. Box 883
Washington, D.C., 20044
Delivery Address
20 Massachusetts Ave., NW., Room 7222
Washington, DC 20001
Telephone: (202) 353-9265
Fax: (202) 616-8470
Adam.Kirschner@usdoj.gov

COUNSEL FOR DEFENDANT